IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RYAN, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-03134 |
| | § | |
| ERNST & YOUNG, LLP, | § | |
| and S.K. THAKKAR, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS ERNST & YOUNG, LLP AND S.K. THAKKAR'S**
**<u>RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND [DKT. 11]</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

SUMMARY AND STATEMENT OF THE ISSUES .................................................... 1

PROCEDURAL BACKGROUND .................................................................................... 2

ARGUMENT ........................................................................................................................ 3

    I.      Defendants' Notice of Removal was timely. ........................................... 3

    II.     Defendants did not waive their right to remove by filing motions to preserve their rights in state court. ...................................................... 6

    III.    Ryan's Second Amended Petition gives rise to federal-question jurisdiction. ...................................................................................................... 7

          A.    Ryan asserted a federal claim, and it is of no moment that it disavows standing to bring such a claim now. .......................... 8

          B.    Ryan's claim for tortious interference with prospective contract by unlawful act turns on a disputed federal issue of substantial importance to the federal system. .......................... 10

    IV.    Defendants had objectively reasonable grounds for removal. ............... 20

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

**CASES**

*Board of Commissioners of Southeast Louisiana Flood Protection Authority*
  *v. Tennessee Gas Pipeline Company*,
  850 F.3d 714 (5th Cir. 2017) ........................................................................... 15, 17

*Bolivar Sand Co., Inc. v. Allied Equip., Inc.*,
  631 F. Supp. 171 (W.D. Tenn. 1986) ................................................................. 6, 7

*Bosky v. Kroger Tex., LP*,
  288 F.3d 208 (5th Cir. 2002) ................................................................................. 5

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005) ................................................................................ 13

*CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*,
  638 F. App'x 255 (5th Cir. 2015) ........................................................................ 20

*Chapman v. Powermatic, Inc.*,
  969 F.2d 160 (5th Cir. 1992) ................................................................................. 3

*City of McComb v. Myers*,
  122 F. App'x 698 (5th Cir. 2004) (per curiam) .................................................... 5

*Dougherty v. Cerra*,
  987 F. Supp. 2d 721 (S.D. W. Va. 2013) .............................................................. 4

*Eggert v. Britton*,
  223 F. App'x 394 (5th Cir. 2007) ......................................................................... 4

*Forum US, Inc. v. Musselwhite*,
  Civ. A. H–15–1084, 2016 WL 6909297 (S.D. Tex. Jan. 22, 2016) .................... 4, 5

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,
  463 U.S. 1 (1983) ................................................................................................... 5

*Gobble v. Hellman*,
  No. 1:02CV0076, 2002 WL 34430286 (N.D. Ohio Mar. 26, 2002) ................ 18, 19

*Goffney v. Bank of Am., N.A.*,
  897 F. Supp. 2d 520 ............................................................................................. 18

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005) ................................................................................ 8, 11, 19, 20

*Griffith v. Alcon Research, Ltd.*,
  712 F. App'x 406 (5th Cir. 2017) ........................................................................ 20

*Gunn v. Minton*,
568 U.S. 251 (2013) ..................................................................................................19

*Howery v. Allstate Ins. Co.*,
243 F.3d 912 (5th Cir. 2001) ...............................................................................9, 13

*Hoyt v. Lane Constr. Corp.*,
927 F.3d 287 (5th Cir. 2019) ....................................................................................6

*In re Al Copeland Enters., Inc.*,
153 F.3d 268 (5th Cir. 1998) ....................................................................................6

*Lindsey v. JPMorgan Chase Bank Nat'l Ass'n*,
No. 3:12–CV–4535–M–(BH), 2013 WL 2896897 (N.D. Tex. June 13, 2013) .......18

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005) ..................................................................................................20

*Mumfrey v. CVS Pharmacy, Inc.*,
719 F.3d 392 (5th Cir. 2013) ....................................................................................3

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014) ..................................................................................19

*Navistar International Corp. v. Deloitte & Touche LLP*,
837 F. Supp. 2d 926 (N.D. Ill. 2011) ......................................................................18

*Ngo v. PM/CTS, LLC*,
Civil Action No. 4:15–CV–1644, 2015 WL 5458598 (S.D. Tex. Sept. 15, 2015) ...................4

*Offshore Serv. Vessels, L.L.C. v. Surf Subsea, Inc.*,
No. 12-1311, 2012 WL 5183557 (E.D. La. Oct. 17, 2012) .....................................19

*Okla. Tax Comm'n v. Graham*,
109 S. Ct. 1519 (1989) ...............................................................................................9

*Oritz v. Brownsville Indep. Sch. Dist.*,
257 F. Supp. 2d 885 (S.D. Tex. 2003) (Hanen, J.) ...................................................7

*Parish of Cameron v. Auster Oil & Gas Inc.*,
420 F. Supp. 3d 532 (W.D. La. 2019) .......................................................................5

*Rivet v. Regions Bank of La.*,
522 U.S. 470 (1998) ...................................................................................................5

*Rosenthal v. Coates*,
148 U.S. 142 (1893) ...................................................................................................7

*Singh v. Duane Morris LLP*,
    538 F.3d 334 (5th Cir. 2008) ...................................................................................18

*Speakers of Sport, Inc. v. ProServ, Inc.*,
    178 F.3d 862 (7th Cir. 1999) ...................................................................................14

*Spear Mktg., Inc. v. BankcorpSouth Bank*,
    791 F.3d 586 (5th Cir. 2015) ...................................................................................10

*Strong v. Green Tree Servicing, L.L.C.*,
    716 F. App'x 259 (5th Cir. 2017) .............................................................................6

*Taylor v. Anderson*,
    234 U.S. 74 (1914) ...................................................................................................9

*Tedford v. Warner-Lambert Co.*,
    327 F.3d 423 (5th Cir. 2003) ...................................................................................6

*Thomas v. S. Farm Bureau Life Ins. Co.*,
    751 F. App'x 538 (5th Cir. 2018) ...........................................................................20

*Wal-Mart Stores, Inc. v. Sturges*,
    52 S.W.3d 711 (Tex. 2001) ...............................................................................11, 14

*Wullschleger v. Royal Canin U.S.A., Inc.*,
    953 F.3d 519 (8th Cir. 2020) ...................................................................................15

## STATUTES

15 U.S.C. § 78a ...................................................................................................................10

15 U.S.C. § 7202(b)(1) .........................................................................................................8

15 U.S.C. § 78j-1(g) ...........................................................................................8, 10, 11, 12

15 U.S.C. § 78j-1(h) ...........................................................................................................12

28 U.S.C. § 1446(b)(2)(B) .....................................................................................................3

28 U.S.C. § 1446(b)(3) .................................................................................................3, 4, 6

## OTHER AUTHORITIES

17 C.F.R. § 210.2-01(2) ...................................................................................................8, 10

17 C.F.R. § 210.2-01(c)(4) ...............................................................................................8, 10

PCAOB Rule 3520 .......................................................................................................8, 10, 11

S. Rep. No. 107-205 (2002) ..................................................................................................16

*Bush Signs Bill Aimed at Fraud in Corporations*,
    N.Y. Times, July 31, 2002 ..........................................................................................16

*In the Matter of Robert Cooper & Co., CPA PC*,
    SEC Docket (CCH) 12655523 (Dec. 8, 2014) ........................................................12

*Preventing Future Enrons: Implementing the Sarbanes-Oxley Act of 2002*,
    8 Stan. J.L. Bus. & Fin. 127 (2002) ..........................................................................16

Daniel L. Goelzer, PCAOB Board Member, The Work of the PCAOB and its Impact on Tax
    Services (Nov. 10, 2004) ............................................................................................17

Defendants Ernst & Young LLP ("EY") and S.K. Thakkar ("Thakkar") file this Opposition to Ryan LLC's ("Ryan") Motion for Remand ("Motion").

## SUMMARY AND STATEMENT OF THE ISSUES

Ryan's Motion is an effort to distract from a fundamental admission—Ryan intends to ask the state court to interpret significant federal issues in asserting its own offensive claims.

Unsure of the substance of its remand arguments, Ryan begins with a claim that Defendants removed too late. But the Notice of Removal was on file well within thirty days from the filing of the Second Amended Petition, which *for the first time* incorporated into its pleadings alleged federal violations.

Ryan next claims waiver. But its argument ignores well-settled law that defendants do not waive the right to seek a federal forum by the mere filing of state-court motions (here minutes before filing their notice of removal) for purposes of preserving rights in state court that may otherwise be waived.

Finally getting to the substance, Ryan claims for the first time that it lacks standing to bring the federal "violations" it plainly pled in the Second Amended Petition. But jurisdiction is decided at the time of removal based on the face of the pleadings, and this Court had jurisdiction at the time of removal over Ryan's federal claims. As for the second ground for removal, Ryan does everything it can—including attempting to rewrite the plain language of the Second Amended Petition—to minimize what it eventually must concede. If this case were remanded, Ryan intends to ask the state court to adopt an aggressive interpretation of federal statutes and regulations governing the entire public-company auditing industry.

This Court has jurisdiction because Ryan chose to inject into its own offensive claims issues of great federal importance. Defendants' grounds for removal were objectively reasonable and plainly support this Court's exercise of jurisdiction.

## PROCEDURAL BACKGROUND

On June 15, 2020, Ryan sued EY and Thakkar in Texas state court in the 281st District Court of Harris County, Texas.  EY is an accounting, audit, and professional services firm.  Ryan is a competing accounting and consulting firm.  This suit began with Ryan accusing EY of obtaining supposed trade secret information of Ryan's when EY was conducting its financial-statement audits of companies that are also Ryan's clients.  Ryan originally asserted claims for misappropriation of trade secrets and tortious interference "with present and prospective business relationships" and a claim against Thakkar for breach of contract.

Ryan sought a temporary restraining order and temporary injunction in connection with its trade-secret claim.  As Ryan concedes, federal issues permeated EY's defenses during this phase of the case.  Ryan's trade-secret claim focused on EY's audits of the financial statements for its clients for which Ryan has provided services related to those clients' liabilities for federal oil and gas royalties.  In *defending* against Ryan's requests for temporary and permanent injunction, EY maintained that federal auditing standards required EY to obtain the information at issue from its clients concerning financial statement line items related to its federal royalty obligations and credits against those obligations; EY also argued that federal standards required it not to alter its archived audit files, which included certain Ryan-related documents.  The parties litigated those issues and ultimately agreed on a temporary injunction, entered on July 20, 2020, that, among other things, allowed EY to maintain certain Ryan-created documents in a single copy of its archived work papers for previously issued audits.

Nearly a month later, on August 19, 2020, Plaintiff served its Second Amended Petition, which for the first time included—as an *offensive part of its claims*—allegations that EY violated provisions of federal law.  2d Am. Pet. ¶¶ 6.1–6.12.  This was the first time that Ryan made clear that it was asking the state court to decide federal legal issues as part of Ryan's own claims (as

opposed to replying to the federal defenses EY had previously raised).  Under the heading "Violations of AICPA, PCAOB, SEC, TSBPA Auditing Standards and Rules and AICPA Codes of Conduct," Ryan alleged that EY's conduct violated laws of the Securities and Exchange Commission (the "SEC") and standards of the Public Company Accounting Oversight Board (the "PCAOB"), a regulatory entity that was created when Congress passed the Sarbanes–Oxley Act of 2002.[1]  *Id.* ¶¶ 6.1–6.4, 6.6–6.7.  Accordingly, Plaintiff's Second Amended Petition was the first pleading, motion, order, or other paper from which it could be ascertained that this case is one which is or has become removable.

On September 8, 2020, Defendants exercised their right to seek a federal forum, removing this action well within the 30-day time period required by 28 U.S.C. § 1446(b)(3).

## ARGUMENT

### I.  Defendants' Notice of Removal was timely.

Ryan's arguments concerning the timeliness of the Notice of Removal serve only to demonstrate how federal issues permeate all aspects of this case, whether as part of the defenses or Ryan's own offensive claims.  As the Fifth Circuit has explained, the thirty-day removal period is only triggered under § 1446(b)(2)(B) "where the initial pleading '*affirmatively reveals on its face*'" that subject-matter jurisdiction exists.  *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 399 (5th Cir. 2013) (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)).  As Plaintiff admits, its original petition "did not plead any federal cause of action and contained no reference to federal law."  Dkt. 11 at 11.  If, as here, the case stated in a plaintiff's initial pleading is not removable, "a notice of removal may be filed within 30 days after receipt by the defendant,

---

[1]   Under the SEC's oversight, the PCAOB has the authority to investigate and discipline registered public accounting firms like EY for noncompliance with the Sarbanes–Oxley Act, the rules of the PCAOB and the SEC, and other professional standards.

through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Ryan claims federal jurisdiction first arose in July based on three events: (1) Defendants defended against Ryan's application for temporary injunctive relief by pointing to federal law, and Ryan filed a response in opposition claiming those defenses were invalid; (2) at a hearing on those matters, Defendants again asserted their federal defenses; and (3) leading up to the hearing on Ryan's application for a temporary injunction, Ryan served a disclosure stating its intent to offer expert testimony that would rebut Defendants' federal-law defenses, including by arguing that Defendants' actions violated federal law.  But those arguments fail for two plain reasons.

First, the documents Ryan cites as revealing the removability of this action are neither amended pleadings, motions, nor orders and are only "other papers."  That is significant because Defendants have only asserted federal-question jurisdiction: "In contrast to diversity jurisdiction, [] 'other paper[s]' [are] irrelevant to removal on federal question jurisdiction because such jurisdiction is generally determined by reference to the well-pleaded complaint rule requiring a federal question on the face of a properly pleaded complaint." *Forum US, Inc. v. Musselwhite*, Civ. A. H–15–1084, 2016 WL 6909297, at *6 (S.D. Tex. Jan. 22, 2016) (Harmon, J.) (citing *Eggert v. Britton*, 223 F. App'x 394, 397 (5th Cir. 2007)).  Thus, "where removal is premised on federal question jurisdiction, as it is here, 'the "other paper" doctrine has little application.'"  *Ngo v. PM/CTS, LLC*, Civil Action No. 4:15–CV–1644, 2015 WL 5458598, at *3 (S.D. Tex. Sept. 15, 2015) (quoting *Dougherty v. Cerra*, 987 F. Supp. 2d 721, 729 (S.D. W. Va. 2013) (citing *Eggert*, 223 F. App'x at 397)).  "The limited circumstance where the 'other paper' is relevant to federal question jurisdiction is to show that a plaintiff's state-law claim is one that is preempted by federal

law." *Forum US*, 2016 WL 6909297, at *6 (citations omitted).  Preemption is not at issue here.  Accordingly, it is inappropriate for Ryan to ask the Court to look to (1) its response to one of Defendants' motions, (2) a hearing transcript, or (3) its expert disclosure, to demonstrate that it was asserting federal claims that did not appear in any of its pleadings prior to the filing of Plaintiff's Second Amended Complaint.

Second, Defendants' federal defenses—and Ryan's rebuttals to the same—did not clarify that Plaintiff was alleging *as part of its claims* that EY supposedly violated federal law.  It is settled that defenses cannot give rise to federal-question jurisdiction because "[a] defense is not part of a plaintiff's properly pleaded statement of his or her claim." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).  Nor can federal-question jurisdiction arise from "a plaintiff's anticipation of a federal defense." *City of McComb v. Myers*, 122 F. App'x 698, 699 (5th Cir. 2004) (per curiam).  Ryan cannot get around this rule by noting that it opposed Defendants' federal-compliance defenses by accusing Defendants of violating federal law.  Dkt. 11 at 14.  Just as a defense cannot give rise to federal jurisdiction, neither does federal jurisdiction arise when a plaintiff "asserts that federal law deprives the defendant of a defense he may raise." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983) (citations omitted).

Ryan's reliance on Defendants' subjective awareness is also misplaced.  A defendant's subjective awareness of the existence of federal issues outside of a plaintiff's pleadings is "irrelevant in determining removability," as "there is no duty on the part of the defendant to investigate and 'connect the dots' outside the pleadings." *Parish of Cameron v. Auster Oil & Gas Inc.*, 420 F. Supp. 3d 532, 536–37 (W.D. La. 2019) (quoting *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 210 (5th Cir. 2002)).

Plaintiff's August 19, 2020 filing of its Second Amended Petition was the event that first gave rise to the removability of this action.  Under 28 U.S.C. § 1446(b)(3), Defendants had until September 18, 2020, to exercise their right to seek a federal forum.  Because their Notice of Removal was filed on September 8, 2020, it was timely.

## II.  Defendants did not waive their right to remove by filing motions to preserve their rights in state court.

Ryan's Motion obfuscates the rules governing waiver of a federal forum.  A defendant's waiver of a federal forum "must be clear and unequivocal."  *Strong v. Green Tree Servicing, L.L.C.*, 716 F. App'x 259, 263 (5th Cir. 2017) (quoting *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 428 (5th Cir. 2003), *superseded in part by statute*, Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, *as recognized in Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 293–94 (5th Cir. 2019)).  The defendant, moreover, must have waived its right to seek a federal forum intentionally.  *Tedford*, 327 F.3d at 428 n.15 ("[W]aiver is 'the intentional relinquishment or abandonment of a known right." (quoting *In re Al Copeland Enters., Inc.*, 153 F.3d 268, 271 (5th Cir. 1998))).

Here, where "the right to remove did not exist initially, the issue is what acts are sufficient, *once that right is created*, to constitute a waiver of the right."  *Bolivar Sand Co., Inc. v. Allied Equip., Inc.*, 631 F. Supp. 171, 172 (W.D. Tenn. 1986) (emphasis added); *see also Tedford*, 327 F.3d at 428 n.15 ("The right to remove arose only upon his dismissal from the action, and thus Warner-Lambert's entering the Rule 11 agreement could not have waived that right.").  Thus, none of Defendants actions prior to the filing of Plaintiff's Second Amended Complaint—which for the first time revealed that the case was removable—could have waived their right to a federal forum.

The only remaining question, then, is whether Defendants' only state-court activity after Plaintiff's Second Amended Petition—the filing of two motions to dismiss on September 8, 2020—constituted a clear and unequivocal waiver of their right to remove. They did not.

As this Court has previously explained, "[t]he waiver rule is meant to prevent a defendant from 'experiment[ing] on his case in the state court, and upon an adverse decision then transfer[ing] it to the federal court." *Oritz v. Brownsville Indep. Sch. Dist.*, 257 F. Supp. 2d 885, 889 (S.D. Tex. 2003) (Hanen, J.) (quoting *Rosenthal v. Coates*, 148 U.S. 142, 147–48 (1893)). Thus, although " a defendant who argues [a dispositive] motion at a hearing or otherwise urges its resolution may not thereafter remove her case," the "'mere filing' of a potentially dispositive motion is insufficient to find waiver." *Id.* (citing *Bolivar Sand*, 631 F. Supp. at 172). If Defendants had sought to urge the state court's resolution of their motions to dismiss prior to removal, they would not have filed those motions, as Plaintiff has observed, "*minutes before* filing their removal papers." Dkt. 11 at 15. Nor would Defendants have included the following disclaimer within the introductory paragraphs in each motion:

> Defendants file this Motion subject to their right to remove based on new allegations in the most recently amended Petition to preserve their rights and maintain the status quo.  The cause of action that is the focus of this Motion appeared in prior Petitions, and today is the deadline for filing this Motion under [the applicable rules].  While Defendants file this Motion *to preserve their rights and the status quo*, *they are not seeking a ruling from this Court* at this time and instead are filing a Notice of Removal immediately after the filing of this Motion.

Dkt. 11-15 at 2 (emphasis added); *see also* Dkt. 11-16.  Because Defendants did not seek resolution of those motions prior to removal, their filing did not constitute a waiver of Defendants' right to seek a federal forum.

**III.**     **Ryan's Second Amended Petition gives rise to federal-question jurisdiction.**

Ryan's Motion concedes what the face of the Second Amended Petition makes plain: As part of its offensive claims, Ryan will ask the court to determine "whether EY's conduct violated

. . . federal auditing standards." Dkt. 11 at 24.  Federal-question jurisdiction arises when either (1) a plaintiff "plead[s] a cause of action created by federal law"; or (2) "in certain cases . . . [where] state-law claims . . . implicate significant federal issues."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  The new allegations in Plaintiff's Second Amended Petition—that EY's actions violated SEC and PCAOB rules and regulations—demonstrate that this case satisfies both tests for federal-question jurisdiction.

### A.  Ryan asserted a federal claim, and it is of no moment that it disavows standing to bring such a claim now.

Ryan's Second Amended Petition alleges in no uncertain terms that EY violated federal law.  It expressly claims violations of the following federal statutes and regulations:

- <u>15 U.S.C. § 78j–1(g)(1)</u>, which Ryan alleges makes it "unlawful for a registered public accounting firm (and any associated person of that firm) . . . to provide to that [company], contemporaneously with the audit, any non-audit service, including—*bookkeeping or other services related to the accounting records or financial statements of the audit client*."  2d Am. Pet. ¶ 6.7 (emphasis contained in 2d Am. Pet.).

- <u>17 C.F.R. § 210.2–01(2)</u>, which Ryan alleges allows the SEC to "scrutinize[] when the rendering of services 'places the accountant in the position of auditing his or her own work.'"  2d Am. Pet. ¶ 6.7.

- <u>17 C.F.R. § 210.2–01(c)(4)</u>, which Ryan alleges provides that "[a]n accountant is not independent if, at any point during the audit and professional engagement period, the accountant provides . . . (i) Bookkeeping or other services related to the accounting records or financial statements of the audit client."  2d Am. Pet. ¶ 6.7.

- <u>PCAOB Rule 3520</u>, which Ryan alleges requires "a public accounting firm to be independent of the firm's audit client throughout the audit and professional engagement period."  2d Am. Pet. ¶ 6.6.[2]

---

[2]    "A violation . . . [of] any rule of the [PCAOB] shall be treated for all purposes in the same manner as a violation of the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.) or the rules and regulations issued thereunder . . . ."  15 U.S.C. § 7202(b)(1).

Although Defendants dispute these supposed violations and Ryan's standing to assert them, the face of Plaintiff's Second Amended Petition asserts claims against EY for violations of federal law, giving rise to federal-question jurisdiction.  "[W]hether a case is one arising under [federal law], in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration[] . . . ."  *Okla. Tax Comm'n v. Graham*, 109 S. Ct. 1519, 1521 (1989) (quoting *Taylor v. Anderson*, 234 S. 74, 75–76 (1914)).

Only now does Ryan acknowledge that it lacks standing to assert these alleged violations. But this concession does not defeat this Court's jurisdiction.  Indeed, Ryan's reliance on *Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001) demonstrates why this Court's jurisdiction is proper.  In *Howery*, the state-court complaint referenced alleged violations of "Federal Trade Commission rules, regulations, and statutes by obtaining Plaintiff's credit report in a prohibited manner," to demonstrate "a further violation of the Texas Deceptive Trade Practices Act."  *Id.* at 915.  The Fifth Circuit concluded this was insufficient to confer federal jurisdiction:

> Howery's mention of the FTC rules, regulations and statutes falls in the middle of a list of alleged Allstate actions that Howery alleged were 'further violation[s]' of the Texas Deceptive Trade Practices Act.  From its context, it appears that Howery's mention of federal law merely served to describe types of conduct that violated the DTPA . . . .  ***This conclusion is bolstered by the fact that the complaint . . . makes no explicit mention of any specific federal statute or regulation.***

*Id.* at 918 (emphasis added).

In stark contrast to the pleadings in *Howery*, the Amended Petition separately describes alleged violations of federal standards, which it states arise from "the Public Company Accounting Oversight Board (PCAOB) and the United States Securities and Exchange Commission (SEC)," and apply to "auditors of public companies."  2nd Am. Pet. ¶ 6.2.  The Second Amended Petition then ***explicitly*** lists these alleged violations by reference to federal statute, regulations, and PCAOB

rules: 15 U.S.C. § 78j–1(g)(1); 17 C.F.R. §§ 210.2–01(2), 210.2–01(c)(4); and PCAOB Rule 3520 (the violation of which is treated as a violation of a federal statute, 15 U.S.C. § 78a).

That Ryan now asks the Court to believe that it intended to only convey that Defendants violated the Texas State Board of Public Accountancy ("TSBPA") as a function of violating SEC and PCAOB rules.  But that argument is merely a concession that Ryan injected these federal claims into its pleadings.  In addition, it is inconsistent with the face of the Amended Petition, which Ryan drafted.  For example, if Ryan had only alleged federal violations to support its alleged TSBPA violations, it would have included a word such as "thus" or "consequently" between "and" and "TSBPA" in this sentence: "Upon information and belief, the actions in this case by EY have violated the standards, rules, and codes of conduct for the AICPA, PCAOB, SEC, and *[thus/consequently, the]* TSBPA."  2d Am. Pet. ¶ 6.4 (alteration added).  But Ryan did not and, unlike the claimant in *Howery*, Ryan plainly and separately alleged violations of federal law.  Ryan may not rewrite, in its Motion, the plain language of the Second Amended Petition.

Further, it is of no moment that Ryan now stipulates its lack of standing to pursue claims based on the federal law it cites, as this Court's jurisdiction is determined at the time of removal. *See, e.g.*, *Spear Mktg., Inc. v. BankcorpSouth Bank*, 791 F.3d 586, 592 (5th Cir. 2015) ("It is this court's established precedent that once a case is properly removed, the district court retains jurisdiction *even if* the federal claims are later dropped or dismissed.").  Because the Second Amended Petition satisfied the first independent basis for federal-question jurisdiction at that time, the Court has federal-question jurisdiction.

### B. Ryan's claim for tortious interference with prospective contract by unlawful act turns on a disputed federal issue of substantial importance to the federal system.

Ryan's Motion makes plain a second ground for jurisdiction: Ryan intends to support an essential element of its claim for tortious interference with prospective business relations by

alleging disputed violations of federal standards.   As Ryan concedes, a claim for tortious interference with prospective contract requires a plaintiff to prove that the defendant's conduct was "independently tortious or unlawful." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 725–27 (Tex. 2001).  State-law claims "arise under" federal law for the purposes of establishing federal-question jurisdiction if they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005).  Each of these requirements is present here.

*Actually disputed.*   As an initial matter, EY vigorously contests the allegation that it violated federal rules, regulations, or standards as alleged in the Second Amended Petition.  EY not only contests the alleged *application* of federal law to the facts of this case but also disputes Ryan's expansive and invalid *interpretation* of the federal standards.   For example, Ryan's allegations presume that an auditor may not provide an audit client "consulting services in the federal royalty, severance tax, and sales and uses tax space," either under PCAOB Rule 3520 or because such services constitute "bookkeeping" under 15 U.S.C. § 78j–1(g)(1).   2nd Am. Pet. ¶¶ 6.5–6.7.  This is a dangerous mischaracterization of federal law which, if allowed to prevail, could threaten the carefully crafted federal standards governing audit firms.  Federal law does not prohibit auditors from offering tax services to audit clients; indeed, federal law expressly provides that auditors may perform tax services for audit clients when approved by the client's audit committee:

> *A registered public accounting firm <u>may</u> engage in <u>any non-audit service, including tax services,</u>* that is not described in any of paragraphs (1) through (9) of subsection (g) for an audit client, only if the activity is approved in advance by the audit committee of the issuer, in accordance with subsection (i).

15 U.S.C. §§ 78j–1(g), (h) (emphasis added).  Federal law likewise does not prohibit auditors from performing non-audit services that are approved by the client's audit committee—so long as those non-audit services are not among those that are expressly prohibited, such as "bookkeeping."  *Id.* By presuming a long list of non-audit services are "bookkeeping," the Second Amended Petition urges an interpretation of the definition of bookkeeping that threatens to swallow the entire rule permitting an auditor to perform non-audit services approved by the audit committee.  2d Am. Pet. ¶ 6.7.  EY advocates a definition that is more consistent with the plain language of the statute and existing federal law.  *See In the Matter of Robert Cooper & Co., CPA PC*, SEC Docket (CCH) 12655523 (Dec. 8, 2014) (prohibited bookkeeping involves "aggregating line items from internal books and records to the financial statements; changing line item descriptions; drafting or editing notes to the financial statements; and converting [] reports or bookkeeping software program reports into financial statements").  Accordingly, the federal issues raised in Ryan's Second Amended Petition are actually disputed.

***Necessary.***  It is only by a superficial view of the Second Amended Petition that Ryan contends the federal law on which its own pleading expressly relies was not actually necessary. Ryan concedes that it asserts a cause of action for tortious interference with prospective business relations through "unlawful" acts.  Dkt. 11 at 20.  The Motion, like the Second Amended Complaint itself, also makes plain that Ryan will support a necessary element of that claim by asking the court to determine whether EY's "conduct violated . . . federal auditing standards."  *Id.* at 24.

Ryan is wrong that its pleading does not necessarily raise a federal issue merely because Ryan also asserts a claim for tortious interference with prospective business relations based on independently tortious conduct.  *Id.* at 19.  The face of the Second Amended Petition does not link

the claim for tortious interference with prospective business relations to any independently tortious conduct and instead supports such a claim through a separate listing of alleged federal violations. *See* 2nd Am. Pet. ¶¶ 6.5–6.7, 8.1–8.5. In any event, Ryan ignores that "what a plaintiff presents as one 'count' may be understood to encompass more than one 'claim.'" *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) ("What is styled as a single breach-of-contract claim actually has two distinct parts."). Here, a claim for tortious interference with prospective business relations based on independently tortious conduct (such as trade-secret misappropriation) would require separate proof, separate conclusions from the jury, and could lead to differing damages or remedies than a claim for tortious interference with prospective business relations based on an unlawful act. Ryan also ignores that the two claims also *involve different Defendants*—the Second Amended Petition alleges that both EY and Thakkar misappropriated Ryan's supposed trade secrets, 2nd Am. Pet. ¶ 7.3, but that only EY supposedly violated federal law, *id.* ¶¶ 6.5–6.7. Accordingly, any Ryan recovery on these separate claims would by necessity be different as they are asserted against different parties, as by the very terms of the Second Amended Petition Ryan could recover for tortious interference with prospective contract by unlawful acts only against EY.

It is also plain that Ryan must prevail on its allegations that EY violated federal law in order to recover for the claim for tortious interference with prospective business relations by unlawful act. Contrary to Ryan's Motion, the analysis in *Howery* does not apply here. There, the plaintiff asserted a claim under the Deceptive Trade Practices Act ("DTPA"), which forbids "a wide range of conduct, prohibiting '[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce.'" *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (quoting Tex. Bus. & Com. Code § 17.46(a)). But the violation of the federal statute at issue in *Howery* "is not an element of the DTPA," and the "statute itself expressly disclaims such a

construction." *Id.* at 918.  By contrast, in *Sturges*, the Texas Supreme Court explained that to prove tortious interference with prospective business relations (as opposed to the claim for tortious interference with a contract) it is *essential* for the plaintiff to prove that the defendant's conduct constitutes "unlawful conduct" that is "tortious in character."  *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (2001).  In other words, unlike the DTPA, unlawful conduct is a necessary element of the claim.

Ryan is also wrong that the Second Amended Petition's references to Texas professional standards could satisfy this element.  While the Second Amended Petition does reference the professional standards of the TSBPA, the preamble to the very provisions Ryan cites make clear that these are "rules of professional conduct."  22 Tex. Admin. Code § 501.51.  Under *Sturges*, supposed noncompliance with professional standards would be insufficient to satisfy the essential element of a wrongful act.  The *Sturges* court adopted the standard set forth in *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862 (7th Cir. 1999), which held that conduct that was "unfair, unethical, and deceitful" was insufficient and that the plaintiff was instead required to prove that "the defendant employed unlawful means to stiff a competitor."  *Sturges*, 52 S.W.3d at 721; *see also id.* at 726 ("For the same reasons accepted by . . . the Seventh Circuit in *Speakers of Sport* . . . we see no need for a definition of tortious interference with prospective business relations that would encompass other conduct.").  The only "unlawful conduct" that the *Sturges* court described as satisfying this standard was the participation in an "illegal boycott."  *Id.*  Accordingly, allegations of mere noncompliance with professional standards do not satisfy this test.

This leaves only the supposed violations of federal law cited in the Second Amended Petition as potential unlawful conduct on which Ryan could rely to support the claim for tortious

interference with prospective business relations through unlawful conduct.[3]  As the Fifth Circuit recognized in *Board of Commissioners of Southeast Louisiana Flood Protection Authority v. Tennessee Gas Pipeline Company*, Ryan's Second Amended Petition "draws on federal law as the exclusive basis for holding [EY] liable for some of [its] actions," and as a result the necessity prong of the *Grable* framework is satisfied.  850 F.3d 714, 722–23 (5th Cir. 2017).  Similarly, in *Wullschleger v. Royal Canin U.S.A., Inc.*, the Eighth Circuit recently reversed a district court's decision to remand an action to state court, holding that federal-question jurisdiction arose out of the plaintiff's state-law claims.  953 F.3d 519, 520–22 (8th Cir. 2020).  Although the court noted that the Missouri antitrust and unjust-enrichment claims at issue had been premised on "violation[s] of federal *and state law*," it concluded that "Plaintiffs' dependence on federal law permeates the allegations such that the antitrust and unjust enrichment claims cannot be adjudicated without reliance on and explication of federal law."  *Id.* at 521–22 (emphasis added).  That is, like Ryan in this case, the plaintiffs had specifically elected to premise claims on alleged violations of federal law, and the complaint included paragraphs recounting the defendants' specific conduct alleged to have violated such laws; the court thus concluded that federal issues had been necessarily raised.  *Id.*

  ***Substantial.***  There is no legitimate question that the federal issues Ryan injected into its claims are important "to the federal system as a whole"—the federal statutes at issue "plainly regulate 'issues of national concern'" and "the case affects 'an entire industry' rather than a few parties."  *Tennessee Gas*, 850 F.3d at 723–24.  Ryan's interpretation of the federal statutes related to auditor independence conflicts with the most important federal financial legislation since the Great Depression.  In signing Sarbanes–Oxley into law, President Bush referred to it as "the most

---

[3]  Nothing in this Brief concedes any such violation or that such violation is sufficient to satisfy the standard for unlawful conduct set forth in *Sturges*.

far-reaching reforms of American business practices since the time of Franklin Delano Roosevelt." Elisabeth Bumiller, *Bush Signs Bill Aimed at Fraud in Corporations*, N.Y. Times, July 31, 2002, at A1; *see also* Neil H. Aronson, *Preventing Future Enrons: Implementing the Sarbanes-Oxley Act of 2002*, 8 Stan. J.L. Bus. & Fin. 127, 132 (2002) ("In passing the Act, Congress sought to fundamentally change the nature and scope of [rules] regulating America's stock markets, the audit firms, and other professionals serving public companies.").

> The Senate Committee Report on Sarbanes–Oxley noted that:

> The issue of auditor independence is at the center of this legislation. Public confidence in the integrity of financial statements of publicly-traded companies is based on belief in the independence of the auditor from the audit client. . . . [E]ach of the country's federal securities laws requires comprehensive financial statements that must be prepared, in the words of the Securities Act of 1933, by "an independent public or certified accountant."

S. Rep. No. 107-205, at 14 (2002). In drafting Sarbanes–Oxley, Congress considered—but expressly rejected—a rule prohibiting auditors from providing any non-audit services to audit clients. The Senate Committee Report stated that Congress "considered adopting a complete prohibition on non-audit services by accounting firms for their audit clients, but instead decided on a somewhat more flexible approach" and drew "a clear line around a limited list of non-audit services that accounting firms may not provide to public company audit clients." *Id.* at 16, 18. Before the Act was passed, the SEC analyzed the impact of various types of non-audit services and observed that "tax services generally do not create the same independence risks as other non-audit services." Revision of the Commission's Auditor Independence Requirements, 65 Fed. Reg. 76,008, 76,052 (Dec. 5, 2000).

The issue of auditor independence and the ability of audit firms to provide tax and other services without compromising independence has been an ongoing focus at the federal level since the passage of Sarbanes–Oxley. The PCAOB has continually monitored and commented on the

impact of tax services provided by audit firms to audit clients.  *See* Daniel L. Goelzer, PCAOB Board Member, The Work of the PCAOB and its Impact on Tax Services (Nov. 10, 2004), https://pcaobus.org/News/Speech/Pages/11102004_GoelzerPCAOBImpactTaxServices.aspx (noting that the PCAOB is "gathering information on the relationship between independence and non-audit services, such as tax services" and considering additional independence rules for tax-related work).

Auditor independence and the careful balance between permitted and prohibited non-audit services is a key provision of Sarbanes–Oxley, which is one of the most important pieces of federal financial legislation in recent history.  In the nearly two decades after Sarbanes–Oxley, federal regulators continue to study, monitor, and regulate auditor independence, and continue to permit auditors to provide tax services to audit clients.  Consistent interpretation of these rules is a subject of vital importance to the federal system.  As in *Tennessee Gas*, "the dispute between the parties does not just concern whether [EY] breached duties created by federal law; it concerns whether federal law created such duties."  850 F.3d at 724.  The resolution that Ryan seeks—including drastically narrowing the non-audit services that auditors are permitted to provide to federal-issuer clients and expanding the definition of impermissible services such as bookkeeping, *see supra* pp. 11–12—would not just impact the parties to this suit but would also have far-reaching effects on the auditing industry as a whole.  For these reasons, the "substantial" prong is satisfied.

*Balance of federal and state judicial responsibilities.*  Exercising jurisdiction in this case would not upset the balance of federal and state judicial responsibilities or, as Ryan contends, "herald a potentially enormous (and improper) shift of traditionally state court cases into federal courts," Dkt. 11 at 23.  To the contrary, this case will require—at Ryan's request—the court to answer *questions of law* concerning Ryan's aggressive interpretation of the federal independence

standards.  Unlike the cases on which Ryan relies, this case does not merely involve applying undisputed federal standards to the facts—a scenario that may arise in a myriad of state-court cases.  For example, in *Navistar International Corp. v. Deloitte & Touche LLP*, the court refused to exercise jurisdiction because the audit firm did "not identify any potentially relevant PCAOB audit standards that the parties ha[d] 'actually disputed'" and merely requesting that "the court [] apply PCAOB audit standards" was insufficient to satisfy the *Grable* test.  837 F. Supp. 2d 926, 930–31 (N.D. Ill. 2011); *see also Singh v. Duane Morris LLP,* 538 F.3d 334, 339 (5th Cir. 2008) ("this case involves no important issue of federal law[;] [i]nstead, the federal issue is predominately one of fact—whether Singh had sufficient evidence that his trademark had acquired secondary meaning"); *Goffney v. Bank of Am., N.A.,* 897 F. Supp. 2d 520, 527 ("[e]ven assuming without deciding that BANA was bound by federal guidelines under HAMP and HAFA, those rules merely provide a standard upon which to measure BANA's conduct"); *Lindsey v. JPMorgan Chase Bank Nat'l Ass'n*, No. 3:12–CV–4535–M–(BH), 2013 WL 2896897, at *6 (N.D. Tex. June 13, 2013) ("the parties' dispute does not rest on the correct interpretation of federal law; it requires only a factual determination of whether Defendants violated the HUD regulations that Plaintiff includes in his breach of contract claim").

By contrast, Ryan intends to ask the state court to adopt its *interpretation* of federal law; this interpretation would drastically narrow, if not eliminate, non-audit services that auditors may lawfully provide to clients whose securities trade on the national exchanges.  That federal bodies such as the SEC and PCAOB—rather than third parties like Ryan—possess exclusive standing to enforce such rules does not diminish the importance of their interpretation to the federal system.  For example, in *Gobble v. Hellman*, the court exercised federal jurisdiction over a state-court claim for breach of fiduciary duty alleging violation of certain rules concerning a company's internal

controls over financial reporting.  No. 1:02CV0076, 2002 WL 34430286, at *3 (N.D. Ohio Mar. 26, 2002) ("interpreting the Exchange Act and the rules and regulations promulgated thereunder is a matter of substantial federal concern and where a plaintiff's claims, however labeled, require such an interpretation, those claims are properly removed to federal court for disposition").[4]  The same is true here.  Because "uniformity [in this area] is highly desirable," "there is no good reason to shirk from federal jurisdiction."  *Offshore Serv. Vessels, L.L.C. v. Surf Subsea, Inc.*, No. 12-1311, 2012 WL 5183557, at *6 (E.D. La. Oct. 17, 2012) (quoting *Grable*, 545 U.S. 319–20).

Likewise, Ryan's own Motion belies its argument concerning the state interest in maintaining professional standards.  Dkt. 11 at 23 (quoting *Gunn v. Minton*, 568 U.S. 251, 264 (2013)).  Ryan claims that Texas looks to *federal law*—which Ryan insists the state court in this case must interpret, *id.* at 24—to define those professional standards.  *Id.* at 17.  Unlike in *Gunn*, which concerned legal malpractice, 568 U.S. at 253, Ryan has injected into its case *federal* statutes and rules governing the auditing profession.  Also unlike in *Gunn*, which involved the application of federal patent law in a "backward-looking," "hypothetical" way, *id.* at 261, Ryan intends to ask a state court to interpret federal standards in a novel and expansive way that has forward-looking and wide-ranging impact.

Interpretation of federal law and rules governing the conduct of auditors in their audits of the financial statements of public companies are of great importance to the federal system and the

---

[4]       The *Gobble* Court recognized that these alleged violations would not "support a claim under the Federal Exchange Act" by the plaintiff.  2002 WL 34430286, at *3.  It nevertheless held that the violations supported federal jurisdiction over the breach of fiduciary duty action because several counts of the fiduciary claim "depend[ed] on whether [d]efendants violated those duties under the Federal Exchange Act and SEC rules and regulations."  *Id.*  Similarly, the Second Circuit has more recently recognized that state-law contract claims that necessarily put at issue SEC rules and regulations satisfy *Grable*'s necessity prong even though those rules only "provide[] for violators to be sanctioned."  *See NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1021–22 (2d Cir. 2014).  These decisions are consistent with the Supreme Court's explanation in *Grable* that "the absence of a federal private right of action [is] evidence relevant to, *but not dispositive of*, the 'sensitive judgments about congressional intent' that § 1331 requires."  545 U.S. at 318 (emphasis added).

functioning of the national stock exchanges, as well as the regulation of the independent auditors, who are critical to the functioning of that system. *See Grable*, 545 U.S. at 315 ("The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in federal court."). Ryan's allegations that EY supposedly violated these standards go to the very heart of whether an auditor may audit public-company financial statements and how such an auditor must do so. These issues, which Ryan chose to inject as part of its claims, quite plainly belong in federal court.

**IV.    Defendants had objectively reasonable grounds for removal.**

This Court should exercise jurisdiction over this case, and Defendants' grounds for removal were more than objectively reasonable for the reasons set forth above. The Fifth Circuit has held that a party has an objectively reasonable basis for seeking removal when a plaintiff's state-court petition "mention[s] federal law" and it is "unclear on whether . . . [a] claim [it asserts] was based solely on state law." *Thomas v. S. Farm Bureau Life Ins. Co.*, 751 F. App'x 538, 540–41 (5th Cir. 2018); *see also Griffith v. Alcon Research, Ltd.*, 712 F. App'x 406, 409 (5th Cir. 2017) (holding that removal was not objectively unreasonable where the plaintiff's state-court petition referenced federal law, even "though ultimately insufficient to confer jurisdiction"). Contrary to Ryan's suggestion, "costs and attorneys fees . . . should not be awarded automatically," even upon remand. *CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 638 F. App'x 255, 260 (5th Cir. 2015) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005)). Ryan chose to explicitly inject alleged violations of federal law into its pleadings. Defendants should not be punished, as Ryan suggests they should, for removing to this Court in reliance on what is plain from the face of Ryan's own Second Amended Petition.

## CONCLUSION

For these reasons, Defendants respectfully request the Court deny Plaintiff's Motion.

Date: October 21, 2020

Respectfully Submitted,

BAKER BOTTS L.L.P.

*/s/ Jessica B. Pulliam*
Jessica B. Pulliam
State Bar Number 24037309
jessica.pulliam@bakerbotts.com
Christopher W. Hunt
State Bar Number 24101944
chris.hunt@bakerbotts.com
2001 Ross Ave, Suite 900
Dallas, Texas 75201
(214) 953-6500 (telephone)
(214) 953-6503 (facsimile)

-and-

Louis E. Layrisson, III
State Bar No. 24067722
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
Tel.: (713) 229-1234
Fax: (713) 229-1522
louie.layrisson@bakerbotts.com

***ATTORNEYS FOR DEFENDANTS ERNST & YOUNG, LLP AND S.K. THAKKAR***

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2020, a copy of the foregoing was served on all counsel of record.

*/s/ Jessica B. Pulliam*
Jessica B. Pulliam